UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYLE HODGES,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:20-cv-607

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether

there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker may properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on November 19, 2012, alleging that he had been disabled as of October 4, 2011. On August 8, 2014, Administrative Law Judge (ALJ) Donna J. Grit issued an unfavorable decision. (PageID.97–107.) After the Appeals Council denied Plaintiff's request for review (PageID.112–15), he sought review in this Court. On March 24, 2017,

Magistrate Judge Ray Kent affirmed the Commissioner's decision. *Hodges v. Comm'r of Soc. Sec.*, No. 1:15-CV-1119, 2017 WL 1100846 (W.D. Mich. Mar. 24, 2017).

Plaintiff filed another application for DIB on April 28, 2017, alleging that he had become disabled on August 9, 2014, due to congestive heart failure; diabetes mellitus; atrial fibrillation; chronic obstructive pulmonary disease (COPD); obesity; stage two diabetes; depression, anxiety, and panic; rheumatoid arthritis in both hands; high blood pressure; syncope hypotension; morbid obesity; and degenerative disc disease. (PageID.138–39, 233–34.) Plaintiff was 46 years old at his alleged onset date and 49 years old both on his date last insured and at the time he filed his application. (PageID.65, 138.) Plaintiff graduated from high school and had some specialized job training in management and supervision. (PageID.257.) Plaintiff's past relevant work was as a spray paint technician, lawn care worker, hog inseminator, and injection mold machine operator. (PageID.64.) After Plaintiff's application was denied, he requested a hearing before an ALJ.

On December 28, 2018, ALJ Kevin Himebaugh held a hearing and received testimony from Plaintiff and James V. Lozer, an impartial vocational expert. (PageID.71–92.) At the hearing, Plaintiff amended his onset date to April 1, 2015. (PageID.251.) On March 18, 2020, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because he was not disabled from his amended alleged onset date through the date of the decision. (PageID.54–66.) The Appeals Council denied Plaintiff's request for review on May 12, 2020. (PageID.40–42.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007).

Plaintiff initiated this civil action for judicial review on July 6, 2020.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff met the Act's insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since his amended alleged onset date of April 1, 2015, the ALJ found that Plaintiff suffered from severe impairments of congestive heart failure; hypertension; COPD; obesity; obstructive sleep apnea; spondylosis of the cervical and lumbar spine; bilateral pes planus with degenerative changes and capsulitis; left shoulder incomplete rotator cuff tear, bursitis, and tendinopathy; and degenerative disc disease of the lumbar spine. (PageID.57.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.58–59.)

The ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), except:

> the claimant cannot lift and/or carry more than ten pounds frequently; the claimant cannot stand and/or walk for more than a total of two hours in an eight-hour workday; the claimant cannot sit for more than a total of six hours in an eight-hour workday; the claimant also cannot crawl or climb ladders, ropes, or scaffolds; the claimant cannot work at unprotected heights or around dangerous moving machinery; no more than occasional balance, stoop, kneel, crouch, or climbing of stairs and ramps; no more than occasional exposure to dust, fumes, odors, gases, humidity, poor ventilation, and extreme heat or cold; and for the left upper extremity, occasional push and pull, occasional reach overhead, and frequent reach in other directions.

(PageID.60.)

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. (PageID.64–65.) At step five, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the occupations of office clerk, receptionist, and order clerk, approximately 384,000 of which existed in the national economy. (PageID.65–66.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (stating that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## DISCUSSION

Plaintiff raises the following issues in his appeal: (1) the ALJ erred by applying *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990), without applying the Sixth Circuit's clarification in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018); (2) the ALJ failed to comply with 20 C.F.R. § 404.1520c in assessing the opinion of Plaintiff's treating nurse practitioner; and (3) the ALJ's RFC determination failed to consider the effects of all of his well-documented impairments on his ability to sustain work activity. (ECF No. 18 at PageID.748.)

**I.      Failure to Comply with *Earley***

Plaintiff's first claim of error is that the ALJ applied *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990), and Acquiescence Rulings 98-3(6) and 98-4(6) without considering the Sixth Circuit's subsequent clarification of *Drummond* in *Earley*. In *Drummond*, the Sixth Circuit held that, absent evidence of "changed circumstances," an ALJ in a subsequent case is bound the findings of an ALJ in a previous case. 126 F.3d at 841–42. Because *Drummond* conflicted with Social Security Administration policy, *see Gale v. Comm'r of Soc. Sec.*, No. 1:18-cv-859, 2019 WL 8016516, at *4 (W.D. Mich. Apr. 17, 2019), *report and recommendation*

6

*adopted*, 2020 WL 871201 (W.D. Mich. Feb. 21, 2020), the Social Security Administration issued AR 98-4(6) to explain how the Social Security Administration will apply *Drummond* to cases within the Sixth Circuit:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

1998 WL 274052, at *29773 (SSA June 1, 1998).

In *Earley*, the Sixth Circuit took the opportunity to clarify *Drummond* in light of some confusion that had occurred regarding its parameters. The ALJ in that case determined that *Drummond* required to him to give preclusive effect to a prior RFC determination absent "new and material evidence documenting a significant change in the claimant's condition." 893 F.3d at 930. The court clarified that res judicata properly applies in a situation where the claimant files a second application covering a previously-adjudicated period "and offers no cognizable explanation for revisiting the first decision." *Id.* at 933. But it noted that the doctrine does not apply in cases involving a new period of time. "When an individual seeks disability benefits for a distinct period of time, each application is entitled to review. There is nothing in the relevant statutes to the contrary. And res judicata only 'foreclose[s] successive litigation of the very same claim.'" *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Thus, an application covering a new period warrants "fresh review," but not necessarily "blind review." *Id.* at 934. That is, an ALJ is permitted to "consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.*

As one court has noted, *Earley* was primarily concerned with fairness to the claimant. "[T]he claimant should not come into the new hearing and face a presumption that the findings at

7

the prior hearing were correct." *Ferrell v. Berryhill*, No. 1:16-cv-50, 2019 WL 2077501, at *5 (E.D. Tenn. May 10, 2019). At the same time, a court should not automatically assume that an ALJ's reference to *Drummond* means that he or she uncritically adopted the prior ALJ's findings. After all, *Drummond* still remains good law. Rather, "a reviewing court should look behind any superficial reference to *Drummond* to determine whether the subject claimant in fact received a fair administrative hearing in adherence to the *Earley* opinion." *Troxell v. Kijakazi*, No. 1:20-0016, 2021 WL 4143938, at *5 (M.D. Tenn. Aug. 16, 2021), *report and recommendation adopted*, 2021 WL 4133963 (M.D. Tenn. Sept. 10, 2021) (citing *Hogren v. Comm'r of Soc. Sec.*, No. 2:19-CV-854, 2020 WL 830401, at *3 (S.D. Ohio Feb. 20, 2020), *report and recommendation adopted,* 2020 WL 1140058 (S.D. Ohio Mar. 9, 2020)).

Here, in spite of the ALJ's references to *Drummond*, nothing indicates that he believed he was he bound by the prior ALJ's findings. The ALJ fully discussed the evidence pertaining to Plaintiff's impairments during the relevant period, including his congestive heart failure, rotator cuff and other shoulder-related issues, COPD, and back issues, including an MRI performed almost a year after Plaintiff's date last insured containing findings that the ALJ concluded were likely present during the period at issue. (PageID.61–62.) The ALJ observed that "new and material evidence" warranted additional RFC limitations for Plaintiff's shoulder impairments and finding additional severe impairments at step two. (PageID.64.) Moreover, rather than stating that he was bound by the prior ALJ's decision, the ALJ reviewed those findings against the medical record from that period and found them "persuasive." The ALJ also found the prior limitation to sedentary work supported both by a CT scan of Plaintiff's lumbar spine from the prior period showing spondylosis and the December 2017 MRI of Plaintiff's lumbar spine. (PageID.64.) In

8

short, notwithstanding his references to *Drummond*, the ALJ's discussion of the evidence and the prior ALJ's decision indicates that the ALJ complied with *Earley*.

## II.     Opinion Evidence

Plaintiff submitted opinion evidence from Nurse Practitioner Jade Klingler, who treated Plaintiff since April 2015 (PageID.735), consisting of a summary of Plaintiff's ability to perform work-related activities and a narrative statement (PageID.732–40). Ms. Klingler opined that Plaintiff frequently could lift and carry less than ten pounds and could sit and stand/walk about two hours each during an eight-hour workday. She further said that Plaintiff would require the option to shift from sitting to standing at will and would need to lie down, recline, and/or elevate his legs at unpredictable intervals four times each day for 30 minutes each time. (PageID.732.) Finally, she said that Plaintiff should be limited to no lifting, pushing, pulling, or overhead reaching with the left upper extremity and that he would miss more than four days of work per month. (PageID.733.)

Because Plaintiff filed his application after March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 404.1520c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 404.1520c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* § 404.1520c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *Id.* § 404.1520c(1)–(5). The ALJ must explain his or her consideration of the supportability and consistency factors, but absent circumstances not present

here, is not required to explain how the remaining factors were considered. *Id*. §§ 404.1520c(b)(2), (3) 416.920c(b)(2), (3). The regulation defines "supportability" and "consistency as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(1)–(2).

The ALJ is to conduct this analysis with regard to all opinions, but is not required to give controlling weight to an opinion from any particular source. "Thus, an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by evidence in the record." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015) (citing 20 C.F.R. § 404.1527).

The ALJ evaluated Ms. Klingler's opinions as follows:

> I find the opinions of Jade Klingler FNP-BC at Exhibits B13F and B14F unpersuasive. While Ms. Klingler's opinions appear somewhat supported by her examinations of the claimant, her opinions are internally inconsistent at times. For example, Ms. Klingler stated that the claimant, of an eight-hour workday, can stand/walk for two hours, sit for two hours, and would need to lie down, recline, or elevate his legs four times a day at 30 minutes each time. However, these limitations equal only six hours and do not explain what the claimant would be doing the remaining two hours of an eight-hour workday. Her opinions are also inconsistent with the claimant's longitudinal medical record. For example, Ms. Klingler's opinion on the claimant's sitting abilities is inconsistent with the claimant's back MRI showing only a mild condition. (Ex, B8F/54). Finally, certain of Ms. Klingler's opinions are based on the claimant's neuropathy that, as discussed earlier in this decision, was not diagnosed until after the period under adjudication.

(PageID.63.)

Plaintiff contends that the ALJ failed to properly evaluate Ms. Klingler's opinion for several reasons. First, he contends that, contrary to the ALJ's finding, Ms. Klinger's opinion is not

10

internally inconsistent regarding total hours when regular breaks, including two 15-minute and one 30-minute lunch break are considered. (ECF No. 18 at PageID.763.) While counsel's post hoc rationale for the discrepancy might explain part of the two-hour void between Ms. Klingler's opinion and a normal eight-hour workday, it still does not account for one hour during an eight-hour workday, and is based on nothing more than counsel's speculation about Ms. Klinger's thinking when she rendered her opinion. Just as a court may not accept the Commissioner's counsel's post hoc rationalization as a substitute for the ALJ's lack of rationale, *see Evans v. Saul*, No. 3:17-CV-475, 2019 WL 3782817, at *8 (E.D. Tenn. Aug. 12, 2019) ("[T]he Court cannot rely upon the Commissioner's *post hoc* rationalizations to support the ALJ's RFC determination."), neither should a Court accept counsel's rationalization for gaps in a treating provider's opinion when there is no obvious explanation for them in the record. Thus, the ALJ did not err in finding Ms. Klingler's opinion internally inconsistent on this basis.

      Plaintiff's second contention is a conglomeration of his second and third arguments. That is, Plaintiff contends that the ALJ erred by interpreting raw medical data when assessing Ms. Klingler's opinion regarding his limitations and pain due to his degenerative back condition and/or annular tear. The ALJ found her opinion unpersuasive because the December 2017 MRI showed only a mild condition. The ALJ cited a February 20, 2018 physical therapy treatment note in which physical therapist Michael Bylsma, PT, DPT, noted that the December 2017 MRI report "found mild disc protrusion." (PageID.63, 509.) David Smullen, M.D., previously read the MRI and made findings on December 10, 2017. (PageID.672–73.) It appears that the physical therapist's note was a summary of Dr. Smullen's findings. Plaintiff contends that the ALJ erred "by interpreting raw medical evidence – the 2017 MRI" (ECF No. 18 at PageID.765), and by using the MRI findings

11

to formulate functional limitations when no medical source interpreted the effects of those findings on Plaintiff's functional abilities. (ECF No. 23 at PageID.790.)

Plaintiff's argument lacks merit. The Sixth Circuit has held that an ALJ does not impermissibly interpret raw medical data by using a radiologist's findings to formulate a claimant's RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726–27 (6th Cir. 2012) (concluding that the ALJ was not required to obtain a medical expert to interpret x-rays because they "had already been read and interpreted by a radiologist"); *Holland v. Comm'r of Soc. Sec.*, No. 4:13-cv-10295, No. 4:13-cv-10295, at *7 (E.D. Mich. 2014) ("[T]he ALJ did not improperly analyze the raw medical data of those test results, e.g., the MRI images; rather, he based his decision on the conclusions found in the test-result summaries prepared by physicians, Drs. Sehgal and Sul."). Moreover, the ALJ did not err by using the physical therapist's summary of Dr. Smullen's findings (which Plaintiff does not claim was inaccurate) to assess Plaintiff's limitations without obtaining a medical expert's opinion on how those findings affected Plaintiff's functioning. It is the ALJ, not a physician, who is charged with the responsibility of determining a claimant's RFC based on the evidence as a whole. 20 C.F.R. § 404.1545(a)(1), (3); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (noting that "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding"). As noted in *Tucker v. Commissioner of Social Security*, 775 F. App'x 220 (6th Cir. 2019), the Sixth Circuit has "[n]o bright-line rule . . . directing that medical opinions must be the building blocks of the residual functional capacity finding;" rather, "the administrative law judge must make a connection between the evidence

12

relied on and the conclusion reached." *Id.* at 226. That is what the ALJ did here.[2] Although the MRI was performed about a year after Plaintiff's date last insured, the ALJ noted that during the period under adjudication, Plaintiff did not attend physical therapy and managed his back pain only with narcotic pain medication. (PageID.62.) In fact, Plaintiff did not attend physical therapy for his back pain until February 20, 2018, more than a year after his insured status expired. Consistent with the MRI findings, this evidence supported the conclusion that Plaintiff's back pain during the relevant period was not disabling. In short, the ALJ did not err in assessing Ms. Klingler's opinions as unpersuasive.

Plaintiff also contends that the ALJ erred in finding the opinions of State agency physician William Jackson, M.D., persuasive because Dr. Jackson issued his opinion in September 2017, prior to the December 2017 MRI. As noted above, however, Dr. Smullen had read and interpreted the MRI results in December 2017, and the ALJ considered the physical therapist's note summarizing those results. *See Giacomelli v. Berryhill*, No. 1:18CV1936, 2019 WL 2492298, at *9 (N.D. Ohio June 14, 2019) (observing that while the state agency physicians did not review an MRI, a radiologist had read and interpreted it and, thus, the ALJ did not err in relying on the "mild" and "moderate" findings in formulating the claimant's RFC). The ALJ clearly considered the MRI results. Therefore, it is clear from the ALJ's decision that he did not rely solely on Dr. Jackson's opinion, but rather considered the entire record in assessing Plaintiff's RFC. Accordingly, this argument lacks merit.

---

[2] Plaintiff relies on *Deskin v. Commissioner of Social Security*, 605 F. Supp. 2d 908 (N.D. Ohio 2008), for the proposition that the ALJ was not free to interpret the MRI and was required to obtain a medical opinion as to the effects of the findings on Plaintiff's functioning. However, at least one court from that district has observed that *Deskin* "is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010).

### III.  Failure to Consider All of Plaintiff's Impairments

Plaintiff's final argument contends that the ALJ failed to consider the effects of all of his impairments on his ability to sustain work activity. Most of his specific arguments pertaining to this issue have been addressed above and warrant no further discussion. His primary contention is that his condition had worsened since ALJ Grit issued her decision in 2014, warranting further restrictions. (ECF No. 18 at PageID.766.) As set forth above, however, the ALJ was required to give Plaintiff's application and the medical evidence a "fresh look," and he was not bound to consider the prior ALJ's findings as a mandatory starting point. *Earley*, 893 F.3d at 931. Nonetheless, the ALJ's decision shows that he considered all of the evidence, including the evidence pertaining to the period at issue, and incorporated additional limitations where warranted.

Accordingly, the ALJ properly considered the effects of all of Plaintiff's impairments, and his decision was supported by substantial evidence.

### **CONCLUSION**

For the reasons stated above, the Commissioner's decision is **affirmed**. An order consistent with this opinion will enter.

Dated: February 17, 2022 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge